UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UTILITY METAL RESEARCH, INC., MARIANO
BORRUSO and PLATING SYSTEMS, INC.,

                Plaintiffs,

      — against —

ALFRED MICHAEL COLEMAN, GEORGE
WAINWRIGHT, RICHARD LOGAN, A.
MICHAEL COLEMAN & ASSOCIATES, INC.,
OMG FIDELITY, INC., JOHN REDO and
CHRIS VIDOLY,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM and ORDER**

03 CV 1463 (SLT)(SMG)

**TOWNES, United States District Judge:**

      Plaintiffs, Utility Metal Research ("UMR"), Plating Systems, Inc. ("PSI"), and Mariano Borruso (collectively, "plaintiffs"), bring this action against defendants OMG Fidelity, Inc. ("OMG Fidelity"), John Rendo ("Rendo"), and Chris Vidoli ("Vidoli") (collectively, the "OMG defendants"), and A. Michael Coleman & Associates ("Coleman & Associates"), Alfred Michael Coleman ("Coleman"), George Wainwright ("Wainwright"), Richard Logan ("Logan") (collectively, the "Coleman defendants") (together, with OMG defendants, "defendants"), alleging defamation, tortious interference with contract, prima facie tort, negligence, and violations of the Federal Fair Debt Collection Practices Act and the New York General Business Law. Both the OMG defendants and the Coleman defendants now move to dismiss plaintiffs' complaint. For the reasons set forth below, OMG defendants' motion for summary judgment dismissing the complaint is granted in all respects, and Coleman defendants' motion for summary judgment dismissing the complaint is granted in part and denied in part.

# BACKGROUND[1]

UMR was formed by Mariano Borruso in 1990, and has a principal place of business at 14 Van Street, Staten Island, New York. Since the inception of UMR, Mr. Borruso has been the president, CEO and Secretary of the corporation. UMR has been inactive for the past few years, and was dissolved by proclamation on March 28, 2001. When it was active, UMR specialized in coordinating subcontractors in the installation of co-generation systems. PSI, a corporation engaged in the development of electroplating, and a manufacturer of chemicals for electroplating, shared its principal place of business with UMR at 14 Van Street, Staten Island, New York.

On multiple occasions during the years 2000 and 2001, OMG Fidelity, a corporation which sells plating chemicals, sold metal plating chemicals to UMR, and UMR then transferred these chemicals to PSI. The transactions between PSI and UMR for the transfer of ownership of the chemicals were non-cash transactions, and in lieu of cash, UMR was granted use of the services of PSI's personnel, location, electricity and utilities.

Sometime in and around 2000 or 2001, OMG Fidelity sold metal plating chemicals to UMR, and although such products were delivered without incident, UMR failed to pay for them. As a result, UMR was indebted to OMG Fidelity for approximately $72,000. OMG Fidelity tried to collect the debt on its own, but after several telephone conversations and an unsuccessful meeting with Mr. Borruso, UMR still failed to satisfy the debt. According to plaintiffs, after their inability to pay continued, John Rendo, comptroller of OMG Fidelity, told Mr. Borruso that he was going to use a collection agency that would make Borruso's "life miserable." OMG Fidelity then retained Coleman & Associates, a corporation engaged in the business of

---

[1] The following facts are taken from plaintiffs' and defendants' 56.1 statements, as well as the exhibits, affidavits and additional documentation submitted by the parties.

commercial debt collection. OMG Fidelity provided Coleman & Associates with information maintained in OMG Fidelity's business records, including copies of the pertinent invoices and contact information for UMR, PSI and Mr. Borruso, and requested that Coleman & Associates collect the debt. According to OMG Fidelity, Coleman & Associates was not given any other instructions.

Initially, Coleman & Associates succeeded in getting UMR to pay approximately $33,000 of its debt owed to OMG Fidelity, using a variety of techniques commonly used by collection agencies, including investigating the financial picture of the debtor and attempting to assist the debtor to obtain financing to pay off the debt. Unfortunately, according to the Coleman defendants, additional financing was not possible due to UMR's extremely poor financial condition and its past history of delinquency in paying its debts, which resulted in default judgments against it. A debt of $39,430.34 still remained outstanding from UMR to OMG Fidelity after the payments were made. As a result, in or about September 2002, OMG Fidelity commenced a collection action against UMR in New York State Supreme Court (the "Collection Action"). UMR counterclaimed with allegations of unlawful practices in debt collection.

According to UMR, the Coleman defendants "embarked on a campaign of threats and harassment" in an attempt to collect the debt from UMR. Plaintiffs allege that the Coleman defendants contacted friends and colleagues of Mr. Borruso and told them that Mr. Borruso was a dishonest person and had substantial legal problems, and made other false and disparaging claims about him. According to plaintiffs, UMR and PSI lost nearly all of their customers because of defendants' behavior and, as a result, are now largely inoperative. In particular, plaintiffs note that UMR's contract with the Trump Organization was never fully paid, and there

was a disruption to UMR's contract with Brooklyn Bagels as a result of defendants' actions.

In June 2002, plaintiffs' attorney contacted the Coleman defendants in writing, and asked for the harassment to stop. Plaintiffs claim they also sent these letters to the OMG defendants, but the wrongful activities continued. According to the OMG defendants, John Rendo contacted Coleman & Associates immediately after being informed of these practices. He spoke with Mr. Coleman and informed him that Mr. Borruso had complained that the Coleman defendants were acting inappropriately and harassing Mr. Borruso. The OMG defendants claim that Mr. Coleman assured Mr. Rendo that Coleman & Associates was not acting inappropriately.

On December 19, 2002, plaintiffs commenced separate actions against the Coleman defendants and the OMG defendants (the "Main Action") in New York State Supreme Court, each alleging defamation, tortious interference with contract, prima facie tort, negligence and unlawful practices in debt collection. The OMG defendants filed a notice of removal dated March 25, 2003, and the Main Action was removed to federal court pursuant to diversity jurisdiction, and the Collection Action was removed pursuant to supplemental jurisdiction. Plaintiffs filed the Amended Complaint on July 17, 2003.

## DISCUSSION

*A.      Standard of Review and Choice of Law*

The OMG defendants move to dismiss plaintiffs' complaint on a motion for summary judgment pursuant to Rule 56 (c). Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The relevant governing law in each case

determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

Although the OMG defendants frame their motion as one for summary judgment pursuant to Rule 56(c), the Coleman defendants move to dismiss their complaint pursuant to Rule 12(b)(6) or Rule 12(c). In evaluating a motion to dismiss a complaint under Rule 12(b)(6), the Court must determine whether the "factual allegations . . . raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, — U.S. — , —, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (internal citations omitted). However, if a party submits additional

evidence outside of the allegations in the pleadings, the Court must "either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Freidl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).[2] While a district court ordinarily must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment," the central inquiry is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999).

Here, plaintiffs have submitted affidavits and other supporting materials, and have captioned and framed both their response to the Coleman defendants' motion and their response to the OMG defendants' motion as responses to motions for summary judgment. In their response to the Coleman defendants' motion, plaintiffs extensively cite to deposition transcripts and other evidence obtained during discovery. It is clear that plaintiffs proceeded as if the Coleman defendants' motion was one for summary judgment. In addition, the Coleman defendants emphasized that their motion to dismiss is "connected at the hip" to the OMG defendants' motion, and stated "these motions ought to be considered together." Therefore, the

---

[2] Rule 12(b) provides, in relevant part: "If, on a motion asserting the defense numbered (6) to dismiss for a failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Court will convert the Coleman defendants' motion to one for summary judgment and consider it in conjunction with the OMG defendants' motion for summary judgment.

Jurisdiction in this case is premised on diversity, and the parties both present arguments based on New York law, the law of the forum state. Accordingly, the Court will apply New York law. *See, e.g., Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) (court saw "no reason not to apply New York law" where "[t]he parties have clearly, if tacitly, agreed that New York law governs this litigation" and "in light of the plaintiff's residence in New York."); *Tehran-Berkeley Civil and Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton,* 888 F.2d 239, 242 (2d Cir. 1989) ("consent to use a forum's law is sufficient to establish choice of law"); *Connecticut Indemnity Co. v. 21st Century Transport Co., Inc.,* 186 F.Supp.2d 264, 269 (E.D.N.Y. 2002) ("[T]he parties rely on New York law in their submissions, and, given the connections New York has to this lawsuit, there is no reason for the Court not to apply New York law.")

### B.  *Plaintiff's Defamation Claim*

Plaintiffs' Amended Complaint sets forth causes of action for defamation and defamation *per se.* "Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (quoting *Hogan v. Herald Co.*, 84 A.D.2d 470, 474 (4th Dep't), *aff'd*, 58 N.Y.2d 630 (1982). Generally, spoken defamatory words constitute slander, and written defamatory words constitute libel. *Id.*, *Albert v. Loksen* at 265. Plaintiffs' defamation claim is explicitly directed at words spoken by the Coleman defendants; it is, therefore, a claim for slander.

The Coleman defendants seek summary judgment dismissing the first and second counts of the complaint on the ground that the amended complaint fails to meet the minimum pleading requirements of the Federal Rules of Civil Procedure. The OMG defendants make a similar

motion; however, they rely on the failure to comply with the special pleading requirements of NYCPLR § 3016(a). In *Kelly v. Schmidberger*, 806 F.2d 44 (2d Cir. 1986), the Court of Appeals, which affirmed the finding of the trial court that the alleged slanderous statement at issue was actionable, wrote as follows: Because in federal diversity cases such as this, procedural matters are governed by the Federal Rules of Civil Procedure, "the mode of pleading defamation is governed by Rule 8, Fed. R. Civ. P." *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980). Complaints which do not plead the allegedly defamatory statements *in haec verba* have, in the past, been held sufficient. *See Pierre v. Printing Developments, Inc.*, 432 F.Supp. 840, 843 (S.D.N.Y. 1980). The central concern is that the complaint "afforded defendant sufficient notice of the communications complained of to enable him to defend himself." *Liquori v. Alexander*, 495 F.Supp. 641, 647 (S.D.N.Y. 1980). A complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964-65 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of these facts is improbable, remote and unlikely." *Id*. at 127 S.Ct. 1965. Under these standards, Counts 1 and 2 are adequately pleaded. The complaint states the gist of the alleged slanderous statements and names the alleged speaker and the persons to whom the statements were allegedly made. That information provides sufficient facts for defendants to frame a defense to those counts and, accordingly, the motions of the Coleman defendnts and the OMG defendants to dismiss Counts 1 and 2 for failure to state a claim are denied.

The OMG defendants also seek summary judgment dismissing Counts 1 and 2, the defamation claims against them, on the grounds that the amended complaint does not allege any defamatory statements made or published by them. Additionally, discovery procedures have

been exhausted and plaintiffs failed to produce any evidence which would support their claims for defamation against the OMG defendants. Further, these defendants deny that they made any such statements or that anyone made such statements at their request. Plaintiffs respond that the complaint includes numerous alleged slanderous statements made to sixteen (16) friends, relatives, and business associates of Borruso, all of whom have been identified to defendants. Plaintiffs believe, without supplying any evidence to support the fact, that the OMG defendants are culpable because the Coleman defendants uttered the slanderous statements at their behest.

A cause of action for slander under New York law includes the following elements:

(1) a defamatory statement of fact;
(2) that is false;
(3) published to a third party;
(4) of and concerning the plaintiff;
(5) made with the applicable level of fault on the part of the speaker;
(6) causing special harm and/or constituting slander per se; and
(7) not protected by privilege.

*Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).

These defendants argue that they have, through competent evidence, discharged their burden by demonstrating that plaintiffs cannot establish any of these elements as against htem. This Court agrees.

Plaintiffs' response in opposition consists solely of hearsay or conclusory allegations that the statements were made, and that the OMG defendants are responsible. "When challenged on a motion for summary judgment, a plaintiff may not rely solely on hearsay or conclusory allegations that the slanderous statement was made." *Albert v. Loksen*, 239 F.3d 256, 266-67 (2d Cir. 2001) (quoting *Snyder v. Sony Music Entm't, Inc.*, 252 A.D.2d 294, 298 (1st Dep't 1999); *see also* Fed. R. Civ. P. 56(3) (affidavits in opposition to summary judgment "shall set forth such facts as would be admissible in evidence"); *Sarno v. Douglas Eliman-Gibbons & Ives, Inc.*, 183

F.2d 155, 160 (2d Cir. 1999) (holding that hearsay statement "did not constitute competent evidence" and could not be considered in opposition to summary judgment motion). "[S]ummary judgment 'is the put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

There is no non-hearsay evidence in the record from which a jury could conclude that the OMG defendants made slanderous statements about plaintiffs or that the Coleman defendants did so at their request. The OMG defendants' motion for summary judgment dismissing Counts 1 and 2 of the complaint as to them is granted.

## C.     *Federal Fair Debt Collection Practices Act*

Plaintiffs claim that OMG, Rendo and Vidoli violated the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"). The FDCPA prohibits deceptive and misleading practices by "debt collectors." 15 U.S.C. § 1692e; *see also Bleich v. Revenue Maximization Group, Inc.,* 239 F. Supp. 2d 262, 264 (E.D.N.Y. 2002). The statute specifically defines debt collectors as those engaged in "any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692e. Thus, by its terms, the FDCPA limits its reach to those collecting the debts "of another" and does not restrict the activities of creditors seeking to collect their own debts. *Maguire v. Citicorp Retail Services, Inc*., 147 F.3d 232, 235 (2d Cir. 1998); *Harrison v. NBD Inc*., 968 F. Supp. 837, 841 (E.D.N.Y. 1997); *Bleich*, 239 F. Supp. 2d at 264. OMG Fidelity, which is a creditor of UMR (seeking to collect its own debt), is not a "debt collector" subject to liability under FDCPA. Therefore, any claim against the OMG defendants pursuant to the FDCPA must be dismissed.

In addition, the statute provides that in order to be covered under the purview of the FDCPA, the transaction resulting in the debt must have been a consumer transaction, entered into "primarily for personal, family, or household purposes." 15 U.S.C. § 1692(a)(5); *see also Bloom v. I.C. System, Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) ("The Act characterizes debts in terms of end uses, covering debts incurred 'primarily for personal, family or household purposes.'").

In order for the act to apply, the plaintiff must be a "consumer." *Allen v. BRT Utility Corp.*, No. 95-0221, 1996 WL 776583, at *2 (D. Conn. Oct. 24, 1996); *see also Ernst v. Berson Assocs.*, No. 93-5233, 1994 U.S. Dist. LEXIS 21653, at * 5-6 (E.D.N.Y. Aug. 15, 1994). "To determine whether a debt is commercial or personal in nature, the consumer's purpose in making the transaction is of paramount interest to the Court." *Ernst*, 1994 U.S. Dist. LEXIS 21653, at *5-6.

The debt that is the subject of this action is not a "consumer" debt arising out of a transaction "primarily for personal, family or household purposes" within the purview of the FDCPA. Plaintiffs do not dispute that the debt arose out of a commercial transaction between two business corporations, OMG Fidelity and UMR, but they suggest that the FDCPA is applicable because the alleged acts of the Coleman defendants were aimed at Mr. Borruso personally. However, this fact does not convert plaintiff's debt into a "consumer debt" that would be covered under the statute, and the claims against the Coleman defendants and the OMG defendants pursuant to the FDCPA are dismissed.

### D.     *New York General Business Law*

Plaintiffs concede that their seventh cause of action which seeks recovery pursuant to N.Y. Gen. Bus. Law §§ 601 and 602 (McKinney 2005) is without merit.  The New York Court of Appeals has stated unequivocally that Section 601 does not supply a private cause of action. *See Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 961, 615 N.E.2d 218, 598 N.Y.S.2d 761 (1993) (explaining that Article 29 H of the General Business Law, which includes Section 601, "authorizes only the Attorney General or a District Attorney to commence an action for violation of its provisions").[3]  Accordingly, plaintiff's claims pursuant to N.Y. Gen. Bus. Law §§ 601 and 602 are dismissed.

Plaintiffs have also asserted claims against defendants pursuant to New York City Admin. Code § 20-490 ("NYC Code § 20-490").  This provision states that "[i]t shall be unlawful for any person to act as a debt collection agency without first having obtained a license in accordance with the provisions of this subchapter, and without first being in compliance with all other applicable law, rules and regulations."  NYC Code § 20-490.  OMG Fidelity is not a debt collection agency, and as such, this administrative provision is inapplicable to them.  Plaintiffs' claim is dismissed as against the OMG defendants.

As to the Coleman defendants, they do not dispute that they are not licensed.  However, there is no authority to support plaintiffs' implied assertion that a private cause of action for non-compliance with this administrative provision exists.  Defendants argue that, at most, the New

---

[3] Although Article 29-H prohibits principal creditors or their agents from engaging in certain practices (which are listed in GBL § 601), GBL § 602 specifically "authorizes only the Attorney-General or a District Attorney to commence an action for violation of [§ 601]." *Varela,* 81 N.Y.2d at 961, 598 N.Y.S.2d. at 762.

York City Department of Consumer Affairs has the authority to issue penalties for the violation of NYC Code § 20-490, pursuant to N.Y.C. Code § 20-494. They reason that the Court of Appeals' holding in *Varela* that N.Y. Gen. Bus. Law § 601 does not give rise to a private cause of action forecloses the possibility that N.Y.C. Code § 20-490 gives rise to a private cause of action.

Case law is inconsistent on this issue. In *Lindbergh v. Transworld Systems, Inc.*, 846 F. Supp. 175 (D. Conn. 1994), the Court found that even if the defendant had violated a state statute by attempting to collect a debt while unlicensed, the plaintiff had no claim under the FDCPA and any remedy would lie with the state Banking Commissioner. However, in *Williams v. Goldman & Steinberg, Inc.*, No. 03-2132, 2006 WL 2053715 (E.D.N.Y. July 21, 2006), the Court concluded that there was a violation of the FDCPA because the defendant in that case did not have a license when it sent a collection letter to a New York City resident, as required by NYC Code§ 20-490. *Id.* at *1. In the instant action, this Court has already determined that the debt being collected is not under the purview of the FDCPA because it is a commercial debt. Plaintiffs' claim is also dismissed as to the Coleman defendants.

### E. *Tortious Interference with Contract and Prospective Contracts*

Under New York law, the tort of intentional interference with contractual relations has four elements: (i) existence of a valid contract; (ii) defendant's knowledge of that contract; (iii) defendant's intentional procurement of the breach of that contract; and (iv) damages caused by the breach. *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762, 767 (2d Cir. 1995); *see also Flightdocs, Inc. v. Jackson*, No. 04-4840, 2005 WL 2038588, at *4 (E.D.N.Y. Aug. 23, 2005).

Plaintiffs' amended complaint makes vague references to alleged contracts between plaintiffs and their clients, but provides no factual allegations as to the terms of those contracts, how they were breached, or how any of the defendants procured a breach. Vague references to

an intentional course of conduct are insufficient to sustain their claims. *See Edward B. Fitzpatrick, Jr. Contr. Corp. v. County of Suffolk*, 138 A.D.2d, 446, 449, 525 N.Y.S.2d 863 (2d Dep't 1988); *see also ECOR Solutions, Inc. v. Malcolm Pirnie, Inc*., No. 02-1103, 2005 WL 1843253, at *4 (N.D.N.Y. July 29, 2005).

Moreover, there is no evidence to support tortious interference with contract or prospective contract. A plaintiff claiming tortious interference with contract is obligated to establish that intentional acts on the part of a defendant were a substantial factor in the disruption of the contract. *Bryce v. Wilde*, 39 A.D.2d 291, 333 N.Y.S.2d 614, 616 (3d Dep't 1972), *aff'd,* 31 N.Y.2d 882, 340 N.Y.S.2d 185, 292 N.E.2d 320 (1972). Plaintiffs' opposition merely contains a conclusory statement, without citation to evidence that there was tortious interference with contracts between UMR and The Trump Organization, and UMR and Brooklyn Bagel.

During his deposition, Mr. Borruso testified that UMR completed its work pursuant to its contract with Brooklyn Bagel, but Brooklyn Bagel refused to pay a balance on the contract because someone from Brooklyn Bagel told him that they knew secrets about him. (Deposition of Mariano Borruso dated March 8, 2005 ("Borruso Dep. II") at 215-17.) The fact that someone from Brooklyn Bagel told Mr. Borruso that they knew "secrets" about him cannot serve as evidence that any of the defendants acted with intent to procure a breach of the Brooklyn Bagel contract, or, that any act of the defendants was a substantial factor in causing Brooklyn Bagel to refuse to pay a balance on its contract with UMR, especially in light of the fact that Mr. Borruso admitted that the equipment installed by UMR for Brooklyn Bagel did not work properly. (*Id.*) Moreover, Mr. Borruso expressly testified that the only effect the alleged acts of the defendants has on his contract with the Trump Group was that it cast a "jaundiced eye" on the project. (Deposition of Mariano Borruso dated January 25, 2005 ("Borruso Dep. I") at 107-09). As with his project with Brooklyn Bagel, Mr. Borruso expressly admits that there was a problem with the

-14-

equipment installed for the Trump Group. (*Id.*). Because plaintiffs have failed to show that defendants' actions were a substantial factor in the disruption of either contract, plaintiffs' claim must fail.

Under New York law, the elements of a tortious interference with prospective contract or business relations claim are: (1) the existence of business relations with a third party; (2) a defendant's interference with those business relations; (3) that the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair or improper means; and (4) injury to the business relationship. *Unique Sports Generation, Inc. v. LGH-III, LLC,* No. 03-8324, 2005 WL 2414452, at *5 (S.D.N.Y. September 30, 2005). Defendants argue, and the Court agrees, that plaintiffs' failure to offer any evidence of the existence of a specific, identifiable prospective business relationship that has been impaired by the defendants' conduct warrants dismissal of their claims. Mr. Borruso's testimony provides only speculation as to the identity of prospective clients and whether the alleged acts of defendants were the cause of the failure to consummate contracts with such clients. Mr. Bossuro's vague statements about UMR's "batting average" and the "possibility" that the Coleman defendants were contacting potential clients cannot serve to support plaintiffs' claims. (Borruso Dep. II at 241-42.) Furthermore, the fact that plaintiffs have failed to offer any proof that defendants knew any of UMR's prospective contractual relations is fatal to their claim for tortious interference with prospective contract. *See Guard-Life Corp. v. S. Parker Hardware Manufacturing Corp.*, 50 N.Y.2d 183, 193, 428 N.Y.S.2d 628, 406 N.E.2d 445 (N.Y. 1980) ("[I]t must be established, as a threshold predicate for any claim of tortious interference, that the alleged tort-feasor knew that his competitor had a contract with the third party."). Therefore, these claims are dismissed.

**F.     *Prima Facie Tort***

Plaintiffs' prima facie tort claim alleges that all of defendants' statements and conduct were without excuse or justification and were motivated solely by their intention to inflict harm on them. To properly claim prima facie tort under New York law, a plaintiff must allege: (1) intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; and (4) by an act, or series of acts, that would otherwise be lawful. *Riel v. Morgan Stanley,* No. 06-0524, 2007 WL 541955, at *14 (S.D.N.Y. Feb. 16, 2007) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984)). A plaintiff must allege that the conduct complained of was done with "disinterested malevolence" – *i.e.*, with the sole intent to harm. *Liberty Mut. Ins. Co. v. York Hunter, Inc.*, 945 F.Supp. 742, 749 (S.D.N.Y. 1996). The genesis of the act which will make it unlawful for the purpose of prima facie tort must be malice, unmixed with any other and exclusively directed to injury and damage of another. *Burns Jackson Miller Summit & Spitzer v. Linder*, 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712 (1983). "Motives such as profit, self-interest, or business advantage will defeat a prima facie tort claim." *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667, 681 (S.D.N.Y. 1995).

In the instant case, any alleged activity on the part of the OMG defendants had its genesis in collecting a debt legally owed from UMR to OMG Fidelity, and the act of retaining an independent contractor to collect the debt was in furtherance of OMG Fidelity's business. The Coleman defendants were hired to collect this debt, and they were acting to fulfill this business obligation. Defendants' actions were not driven by disinterested malevolence, and plaintiff's cause of action for prima facie tort is dismissed.

## G. *Negligence*

Plaintiffs seek to recover for negligence against the OMG defendants, alleging that the Coleman defendants acted as authorized agents, employees and representatives of OMG Fidelity and in furtherance of the business of OMG Fidelity, and that the OMG defendants were

negligent in failing to use reasonable care in the employment, hiring, training, and supervision of the Coleman defendants. "[T]o recover damages for injuries sustained because an employer has hired or retained an incompetent employee, a plaintiff must establish a duty owed by the defendant employer, a breach of that duty by the defendant employer, and damages proximately caused by the defendant employer's breach." *Perry v. Burger King Corp.*, 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (quoting *Vincenzino v. Calvosa,* 151 Misc.2d 95, 572 N.Y.S.2d 611, 612 (N.Y. Sup. Ct. 1991)). A defendant employer may be required to answer for the tort of an employee against a third party, but only "when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm." *Detone v. Bullit Courier Service, Inc*., 140 A.D.2d 278, 528 N.Y.S.2d 575, 576 (1988). Prior decisions in this district have noted that, in New York, negligent hiring/retention claims are usually sustained only where a plaintiff has suffered significant physical injury, and claims involving negligent hiring involving harassment are generally not actionable. *Monte v. Ernst & Young*, 330 F. Supp. 2d 350, 365 (S.D.N.Y. 2004).

Plaintiffs point out that OMG had retained the Coleman defendants on a previous occasion, but offer no other evidence to support their argument that the OMG defendants hired the Coleman defendants with the knowledge that the Coleman defendants had a propensity to harm. Plaintiffs argue that Rendo specifically told Borruso that he would hire a collection agency that would "make his life miserable." However, everyone in the business world is aware that a collection agency can make one's life miserable, and Rendo's understanding that a debt collector could make Borruso's life miserable is not evidence upon which a trier of fact could conclude that OMG defendants authorized Coleman & Associates to engage in harassment when collecting the debt.

In addition, plaintiffs allege that OMG defendants are vicariously liable for any torts committed by the Coleman defendants because the Coleman defendants "acted within the scope of their authority as given by defendant OMG Fidelity." OMG defendants argue that OMG Fidelity cannot be liable for the alleged tortious activity of the Coleman defendants because Coleman & Associates was an independent contractor, and not an agent or employee, of OMG Fidelity.

To distinguish between an employee and an independent contractor, "[t]he test is the existence of a right of control over the agent in respect of the manner in which his work is to be done. A servant is an agent who works under supervision and direction of his employer; an independent contractor is one who is his own master." *North American Airlines, Inc. v. Virgin Atlantic Airways, Ltd.,* No. 05-0150, 2006 WL 3782862, at *6 (E.D.N.Y. Dec. 22, 2006) (quoting *In re Morton*, 284 N.Y. 167, 172 (1940)). The main factor in finding the existence of an agency relationship, versus one merely of an employer-independent contractor, is whether OMG controlled the actions of Coleman & Associates. *See Nat'l Petrochemical Co. of Iran v. The M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991) ("The crucial element of an agency relationship . . . is that the agent acts subject to the principal's direction and control.") (internal quotation and citation omitted).

Plaintiffs have offered no evidence to suggest that Coleman & Associates was subject to the control of OMG Fidelity in its performance of the collection of the debt, and there is no evidence in the record to support plaintiffs' contention. Rendo's deposition testimony illustrates OMG Fidelity's lack of control over the performance of the Coleman defendants. He testified that the OMG defendants did not give Mr. Coleman any instructions on how to collect the debt, nor did OMG Fidelity know of the methods Mr. Coleman was using to collect the debt. (Deposition of John Rendo ("Rendo Dep." at 45-46.) In addition, Rendo testified that he did not

give Mr. Coleman any instructions as to what methods to employ. (*Id*. at 47.) As OMG Fidelity did not exercise control over the Coleman defendants in their activities, there is no basis for the plaintiffs' claims that there was an agency relationship between OMG Fidelity and Coleman & Associates and the OMG defendants cannot be held liable for any torts of the Coleman defendants. The general rule is that an employer who hires an independent contractor is not liable for the independent contractor's negligent acts. *Chainani by Chainani v. Board of Educ. of City of New York*, 87 N.Y.2d 370, 639 N.Y.S.2d 971, 663 N.E.2d 283 (1995); *Rosenberg v. Equitable Life Assurance Society of the United States,* 79 N.Y.2d 663, 668, 584 N.Y.S.2d 765, 595 N.E.2d 840 (1992). *See also Colo. Capital v. Owens*, 227 F.R.D. 181, 188 (S.D.N.Y. 2005) (holding that credit card company that hired debt collection firms as independent contractors to collect debts from consumers was not liable for the debt collection firms' tort in absence of control.). This rule is subject to narrow exceptions, none of which are present in this case.[4] Therefore, because Coleman & Associates was an independent contractor, and not an agent or employee of OMG Fidelity, OMG is not liable for any alleged negligence on the part of Coleman & Associates. Plaintiffs' cause of action for negligence is dismissed.

## **CONCLUSION**

For the reasons set forth above, OMG defendants' motion for summary judgment dismissing the Amended Complaint is GRANTED in its entirety. The Clerk of Court is directed

---

[4] There are exceptions to this rule where the defendant is liable for the independent contractor's negligence, but only in cases where the defendant is vicariously liable for the fault of the independent contractor because a legal duty is imposed on it which cannot be delegated. The exceptions include situations where the employer (1) is under a statutory duty to perform or control the work, (2) has assumed a specific duty by contract, (3) is under a duty to keep premises safe, and (4) has assigned work to the independent contractor which the employer knows or has reason to know involves special dangers inherent in the work or dangers which should have been anticipated by the employer. Additionally, there is a fifth exception where a hospital is held vicariously liable for the emergency room doctors who are independent contractors, where the hospital holds itself out to the public as an institution furnishing doctors, staff, and facilities for emergency treatment.

to enter judgment for the OMG defendants, OMG Fidelity, Inc., John Rendo, and Chris Vidoli, in accordance with this Memorandum and Order, and to close this case as to them.

The Coleman defendants' motion for summary judgment dismissing Counts 3, 4, 5, 6, 7, and 8, is GRANTED.  The motion with respect to Counts 1 and 2 against the Coleman defendants, Alfred Michael Coleman, George Wainwright, Richard Logan, and A. Michael Coleman and Associates, Inc., is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       March 28, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge